UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE E. WALK,

                Plaintiff,         Case No. 12-13047
                                         Honorable Mark A. Goldsmith
                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 11]

Plaintiff Jimmie E. Walk ("Walk") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 11], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.**     **RECOMMENDATION**

For the reasons set forth below, the court finds that the Administrative Law Judge's ("ALJ") conclusion that none of Walk's impairments are "severe" and, thus, that he is not disabled under the Act, is supported by substantial evidence. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Walk's Motion for Summary Judgment [8] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.  REPORT**

    **A.  Procedural History**

On October 23, 2009, Walk filed an application for DIB, alleging disability beginning on January 1, 2008.[1] (Tr. 99-105). His claim for DIB was denied initially on February 9, 2010. (Tr. 47-50). Thereafter, Walk filed a timely request for an administrative hearing, which was held on February 24, 2011, before ALJ Jeanne VanderHeide. (Tr. 19-45). Walk (represented by attorney William Biebuyck) testified at the hearing, as did vocational expert ("VE") Erin O'Callaghan. (Tr. 23-45). On April 1, 2011, the ALJ issued a written decision finding that Walk was not disabled. (Tr. 10-15). On June 15, 2012, the Appeals Council denied review. (Tr. 1-5). Walk filed for judicial review of the final decision on July 11, 2012 [1].

    **B.  Background**

        *1.  Disability Reports*

In an October 23, 2009 disability field office report, Walk reported that his alleged onset date was June 30, 2007. (Tr. 126). The claims examiner noted that, during a face-to-face interview, Walk had trouble seeing and using his hands and "moved slowly and walked hunched over." (Tr. 127-28).

In an undated disability report, Walk indicated that his ability to work is limited by diabetes, dizziness, vision problems, circulation problems, hearing problems, and urinary incontinence. (Tr. 130). He also complained that all of his teeth were falling out, he had no sex drive, and he could not "watch TV for long without [his] eyes burning up." (*Id.*). When describing how these conditions limit his ability to work, Walk stated:

    I couldn't hold my water, my hands and feet were numb, my vision was

---

[1] Walk amended his application at the hearing to reflect this date of alleged onset of disability. (Tr. 23).

2

> getting worse (sometimes my vision goes out completely), my memory is getting worse and it's hard to remember things.

(*Id.*). Walk reported that these conditions first interfered with his ability to work during the 1990s and that he became unable to work on June 30, 2007. (*Id.*). Walk indicated that he stopped working on that date because it became impossible to hold his bladder and he "couldn't stand the embarrassment any longer."[2] (*Id.*).

Walk completed high school but had no further education. (Tr. 134-35). Prior to stopping work, Walk worked as a maintenance man for both Chrysler and Ford from the 1960s through 2007. (Tr. 131). In that job, he performed janitorial work. (*Id.*). He was required to walk four hours per day; stand and climb three hours per day; reach seven hours per day; and sit, stoop, kneel, crouch, crawl, and handle, grab, or grasp big objects two hours per day. (*Id.*). He was frequently required to lift 10 pounds (and had to lift up to 50 pounds). (*Id.*).

Walk reported being seen by Dr. Peggy Richardson, as well as emergency room physicians, regarding his conditions. (Tr. 132-33). He also reported taking several medications, including Detrol, Glyburide, and Metformin (for unknown reasons), Flomax (for his bladder), and penicillin (for infection). (Tr. 134). None of these medicines produced side effects. (*Id.*). He further reported that he had had multiple blood tests and EEG tests. (*Id.*).

In a function report dated November 12, 2009, Walk reported that he lives in a house with his wife. (Tr. 147). He indicated that after he wakes up, he walks around the basement, watches television, and might go for a drive. (*Id.*). His conditions affect his sleep because he has to get up at least five times a night to use the bathroom. (Tr. 148). He generally is able to attend to his own personal care, although his wife sometimes helps him bathe or shave. (*Id.*). He needs reminders to take his medication. (Tr. 149). He does not prepare his own meals because,

---

[2] At the hearing before the ALJ, however, Walk testified that he stopped working because he accepted a voluntary buy-out and retired. (Tr. 25).

in his own words, "I have a wife to do that for me." (*Id.*). He mows the lawn once every two weeks. (*Id.*). He reported that he does not drive because his "eyes burn a lot."[3] (Tr. 150). He does not do any shopping, because his wife does this. (*Id.*). He is able to pay bills, count change, and handle a savings account. (*Id.*). His hobbies include watching television and bowling (he bowls once a week). (Tr. 151).

When asked to identify functions impacted by his condition, Walk checked lifting, hearing, seeing, memory, concentration, understanding, and following instructions. (Tr. 152). He can walk only ½ block before needing to rest for three minutes. (*Id.*). He has trouble following written and spoken instructions and says that he does not finish what he starts. (*Id.*). He does not get along well with authority figures and was fired from a job "many years ago" for fighting. (Tr. 153). He handles stress and changes in routine well. (*Id.*).

In an undated disability appeals report, Walk reported there had been no change in his condition since the time of his last report. (Tr. 175).

   2.   *Plaintiff's Testimony*

At the February 24, 2011 hearing before the ALJ, Walk testified that he lives in a house with his wife and grown son. (Tr. 23-24). He graduated from high school but has had no other education. (Tr. 25). He has worked in maintenance positions in auto plants since the 1960s, and he retired from Chrysler in June of 2007 when they offered him an early buyout. (*Id.*). He has not looked for employment since retiring. (*Id.*).

Walk testified that he uses a cane "every now and then" because he has "numbness" in his legs and feet. (Tr. 26, 28). He indicated that "Dr. Morales" prescribed this for him.[4] (*Id.*).

---

[3] At the hearing before the ALJ, however, Walk testified that he does drive. (Tr. 31).

[4] The record does not contain any treatment records from Dr. Morales. Moreover, the consultative examiner noted that, although Walk came to the exam with a walking aid, it was not

He was diagnosed with diabetes "fifteen, almost twenty years" before the hearing, but was able to work with this condition for years. (Tr. 30). Walk testified that his condition began to worsen during 2005, as he began to experience urinary incontinence. (Tr. 30-31). Walk further testified that, prior to his retirement, he did not have any problems completing his job duties (aside from the fact that his incontinence caused him to need to use the bathroom). (Tr. 26-27). He was not required to lift anything heavier than a push broom in his last job. (Tr. 40).

Walk testified that, during the night, he wakes up 8-10 times to go to the bathroom. (Tr. 27). Because his bladder releases unexpectedly 6-7 times per day, he wears protective undergarments "all the time" during the day.[5] (*Id.*). He takes pills for his diabetes because he is afraid of needles and, thus, will not administer insulin shots. (Tr. 28-29). In addition, Walk takes Gabapentin, Glycerol, and Flomax, none of which produce side effects. (Tr. 28-30).

Walk is able to drive. (Tr. 31). He does not do any chores around the house because his wife and son take care of these things. (Tr. 31-32). He spends most days watching television. (Tr. 32). He goes bowling once or twice a month, he takes his grandchildren to the movies, and he takes his granddaughter to the mall. (Tr. 34). He attends church twice a month. (Tr. 35). Walk testified that he can sit for 20-30 minutes, stand for 20 minutes, and walk ½ block. (*Id.*). Upon questioning by his attorney, Walk testified that he lays down for 45-60 minutes three times a day to get some relief from the pain, numbness, and tingling. (Tr. 39).

### 3. Medical Evidence

#### (a) Treating Sources

The record contains treatment notes from Walk's primary care practitioner, Dr. Peggy

---

medically prescribed. (Tr. 261).

[5] In a third party function report dated January 25, 2010, Walk's son, Jimmie Earl Walk, Jr., indicated that Walk wears such undergarments "occasionally." (Tr. 170).

Richardson, from April of 2005 through October of 2008.[6] As the ALJ noted, these treatment notes show that, at most visits, Walk had no complaints, was frequently non-compliant with taking his diabetes medications, did not follow his prescribed diet, and was seen primarily for prescription refills. (Tr. 14). For example, on April 12, 2005, Dr. Richardson noted that Walk "doesn't really follow a diet." (Tr. 205). On July 24, 2007, it was noted that Walk was "noncompliant" and "doesn't take his meds."[7] (Tr. 199). The same was true at other visits. (Tr. 198 ("did not take his meds today"); 196 ("not taking [diabetes] meds"); 192 ("noncompliance")). On the majority of his visits, Dr. Richardson noted that Walk had no complaints and was feeling good. (Tr. 193, 194, 195, 197, 203).

Walk has experienced bladder dysfunction (frequent urination) since at least March of 2006. (Tr. 204). In April of 2007, Walk first saw Dr. Anthony Adeleye, a urologist. (Tr. 233). At that time, he reported that he had been experiencing urinary frequency, urgency, and incontinence for two or three years. (*Id.*). A CT scan was performed of Walk's abdomen and pelvis on April 14, 2007, and it showed no evidence of a pancreatic, renal, or hepatic mass (except for a few small hepatic cysts). (Tr. 231).

*(b)    Consultative Reports*

Walk underwent a consultative examination with Dr. E. Montasir, who is board certified in internal medicine, on January 23, 2010. (Tr. 254-56). At the exam, Walk complained of neuropathy affecting his feet and bladder. (Tr. 254). On examination, however, Walk had a

---

[6] After the hearing, Walk submitted additional medical records from Dr. Richardson. (Tr. 264-97). Other than an order for diabetic supplies dated January 11, 2010, however, these records are duplicative of prior exhibits.

[7] Additionally, Walk presented to the emergency room on December 6, 2006, complaining of headaches. (Tr. 182). He indicated at that time that he had missed a "couple days" of his medication. (*Id.*). A CT of his brain was normal (Tr. 187), and there was no pathology to account for his headaches.

normal gait and stance; walked well without an aid; could squat and recover; had no muscle atrophy; did not stumble or fall; and was able to get on and off the examination table with no problem. (Tr. 255-56). Dr. Montasir diagnosed central nervous system neuropathy and "what seems to be a neurogenic bladder with overflow and incontinence." (Tr. 256). He opined that Walk "should be able to work as far as his physical condition is concerned." (*Id.*). He further indicated that Walk had no limitation with respect to manipulation, walking, standing, climbing stairs, pushing, pulling or lifting, but said that Walk should avoid climbing ropes, ladders, or scaffolding. (*Id.*).

The record also contains a "Case Analysis" performed by Lynn Yackley, a state agency Single Decisionmaker. (Tr. 263). This analysis, dated January 29, 2010, concluded that Walk's impairments were "non severe." (*Id.*).

### C. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

7

and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Commissioner of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Commissioner of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Secretary of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Utilizing the five-step sequential analysis, the ALJ found that Walk has not been disabled under the Act since January 1, 2008, the alleged onset date. At Step One, the ALJ found that Walk has not engaged in substantial gainful activity since that time. (Tr. 12). At Step Two, the ALJ found that Walk has the medically determinable impairments of non-insulin dependent diabetes mellitus, hypertension, neuropathy, and neurogenic bladder. (*Id.*). However, the ALJ found that none of Walk's impairments, whether alone or in combination, were "severe," in that they did not significantly limit (or were not expected to significantly limit) his ability to perform basic work-related activities for twelve consecutive months. (Tr. 12-15). As a result, the ALJ concluded that Walk has not been under a disability since January 1, 2008.[8] (Tr. 15).

---

[8] The ALJ also made alternative findings, concluding that even if Walk had a severe impairment (or combination of impairments), such impairments did not meet or medically equal a listed

8

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Commissioner of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the

---

impairment and that Walk retained the residual functional capacity to perform his past relevant work. (Tr. 15).  Walk has not challenged the ALJ's findings in these respects.

9

Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  **F.**  **Analysis**

As set forth above, the ALJ found that Walk has four medically determinable impairments: non-insulin dependent diabetes mellitus, hypertension, neuropathy, and neurogenic bladder. (Tr. 12). She then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act. (Tr. 12-15). On appeal, Walk argues that this conclusion is not supported by substantial evidence.

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment. *See* 20 C.F.R. §404.1520(a)(4)(ii). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act . . . ." *Despins v. Commissioner of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §404.1520(c). Basic work activities are defined in the

regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §404.1521(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.*

The Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929. "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time." *Despins*, 257 F. App'x at 930. In considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints. *See Weckbacher v. Commissioner of Soc. Sec.*, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012).

In concluding that Walk's impairments did not significantly limit his basic work activities, the ALJ first concluded that Walk "was not completely credible as to his complaints and functional limitations." (Tr. 14). Specifically, the ALJ pointed out that although Walk indicated in a disability report that he stopped working on June 30, 2007 because of incontinence, he testified at the hearing that he retired from Chrysler on that date after accepting a voluntary buy-out. (Tr. 14, 25, 130). Walk has not looked for employment since his retirement. (*Id.*). Similarly, despite the fact that Walk testified – upon questioning by his own

11

attorney – that his condition had worsened since he stopped working, the ALJ noted that the medical evidence does not bear this out. (Tr. 14). Indeed, at Walk's most recent visits to his treating physician, he generally had no complaints or problems to report. (Tr. 192-94). As a result of these inconsistencies, the ALJ reasonably concluded that Walk's statements regarding his symptoms and limitations were not entirely credible; Walk has not challenged this credibility determination, and it is supported by substantial evidence. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (an ALJ's credibility determination will not be disturbed "absent compelling reason").

Moreover, the ALJ cites medical records from Walk's treating physician, Dr. Peggy Richardson, as well as the consulting examiner, Dr. Montasir, in support of his conclusion that Walk's impairments are non-severe. (Tr. 14-15). Dr. Richardson's records indicate that, from 2005 through 2008, Walk primarily visited his physician's office to obtain medication refills. On many visits, Dr. Richardson noted that Walk had no complaints and was feeling good (Tr. 193-95, 197, 203), and there is no indication that his condition was worsening over time. In addition, as the ALJ noted, Walk's consultative physical examination, on January 23, 2010, was essentially normal. (Tr. 15). Walk had a normal gait and stance; walked well without an aid; could squat and recover; had no muscle atrophy; did not stumble or fall; and was able to get on and off the examination table with no problem. (*Id.* (citing Tr. 254-56)). These medical records provide substantial evidence in support of the ALJ's conclusion that Walk's impairments, whether considered alone or in combination, were not severe.

Walk argues that the ALJ erred in concluding that his impairments were non-severe because Dr. Montasir, the consultative examiner, opined that Walk should avoid climbing ropes, ladders, or scaffolding. (Doc. #8 at 11). According to Walk, climbing ropes, ladders, and

12

scaffolding should be considered "basic work activities" within the meaning of 20 C.F.R. §404.1521(b) and because Walk is limited in these activities, the ALJ should have concluded that he has a severe impairment.

As set forth above, basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §404.1521(b). Specific examples set forth in the regulations include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* Walk concedes that climbing ladders, ropes, and scaffolds "are not specifically listed in this section" (Doc. #8 at 11), and he cites no authority for the proposition that ability to perform these climbing functions would be required to perform most jobs. Indeed, Social Security Ruling 96-9p specifically provides that "climbing ladders, ropes, or scaffolds . . . are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). *See also Larkins v. Astrue*, 2009 WL 650608, at *1 (C.D. Cal. Mar. 11, 2009) (finding that physician-imposed restriction on climbing "did not establish that Plaintiff was significantly limited in performing basic work activities [because] … climbing [is] not [a] basic work activit[y] under the regulations."). Thus, at a minimum, even if Walk was entirely precluded from climbing ladders, ropes, and scaffolds, he still could perform the full range of sedentary work. In sum, Walk has articulated no basis for a finding that climbing ropes, ladders, or scaffolds are basic work activities.

Lastly, Walk argues that the ALJ overlooked his complaints of urinary incontinence and urgency, arguing that this impairment "would reasonably require [him] to be near a rest room in

a work setting and an occupation that would allow for unscheduled restroom breaks." (Doc. #8 at 12). Aside from Walk's own testimony, however – which the ALJ reasonably deemed less than fully credible – there is no medical evidence in the record suggesting that he would need to be "near a restroom" or work in "an occupation that would allow for unscheduled restroom breaks," as Walk now alleges. Where Walk bears the burden at Step Two of establishing that his impairments are severe, his unsupported allegations are simply insufficient.[9]

In summary, although Walk suffers from some physical impairments, the ALJ's determination that none of those impairments, alone or in combination, are "severe" within the meaning of the Act is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Walk's Motion for Summary Judgment [8] be DENIED, the Commissioner's Motion [11] be GRANTED, and this case be AFFIRMED.

Dated: February 25, 2013       s/David R. Grand  
Ann Arbor, Michigan      DAVID R. GRAND  
     United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

---

[9] In addition, Dr. Adeleye's report, on which Walk relies, indicates that at least some of Walk's urinary impairments are "secondary to somewhat poorly controlled diabetes mellitus." (Tr. 220). As discussed above, the record is replete with evidence that Walk was non-compliant with his prescribed diabetes medications and diet. Thus, the fact that Walk could have alleviated at least some of his symptoms by complying with treatment prescribed by his physicians weighs against a finding of disability. *See* 20 C.F.R. §404.1530(a) ("In order to get benefits, you must follow treatment prescribed for your physician if this treatment can restore your ability to work.").

objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 25, 2013.

    s/Felicia M. Moses
    FELICIA M. MOSES
    Case Manager